IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARY ORINGDERFF, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-09-1177 |
| | § | |
| MICHAEL ASTRUE, Commissioner | § | |
| of the Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION ON**
**<u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

This matter was referred by United States District Judge Lee H. Rosenthal, for full pretrial management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket Entry #4). A motion for summary judgment has been filed by Plaintiff Mary Oringderff ("Plaintiff," "Oringderff").[1] (Plaintiff's Motion for Summary Judgment and Brief in Support of Motion for Summary Judgment ["Plaintiff's Motion"], Docket Entry #22). A response to that motion has been filed by Defendant Michael J. Astrue ("Defendant," "Commissioner"), in his capacity as Commissioner of the Social Security Administration ("SSA"), and Plaintiff has replied to that pleading. (Defendant's Response to Plaintiff's Motion for Summary Judgment ["Defendant's Response"], Docket Entry #25; Plaintiff's Reply to Defendant's Brief ["Plaintiff's Reply"], Docket Entry #26). After considering the pleadings and the applicable law, it is RECOMMENDED that Plaintiff's motion for summary judgment be GRANTED, and that this case be REMANDED to the Commissioner for further proceedings consistent with this memorandum.

---

[1] Defendant did not file a motion for summary judgment despite the fact that he was ordered to do so and, in fact, was granted two extensions of time in which to file such a motion. (*See* Docket Entries #11, #18, #19, #23, #24).

**Background**

On July 18, 2007, Plaintiff Mary Oringderff filed an application for Social Security Disability Insurance benefits ("DIB"), under Title II of the Social Security Act ("the Act"). (Transcript ["Tr."] at 77-84, 111). In her application, Plaintiff claimed that she had been unable to work since April 14, 2005, due to an injury to her left knee, multiple surgeries to that knee, major depression, and an anxiety disorder. (Tr. at 111, 131). She explained, "I am in pain all the time, have to take pain medication and I am depressed with anxiety issues." (Tr. at 111). On September 4, 2007, the SSA denied Plaintiff's application for benefits, finding that she is not disabled under the Act. (Tr. at 37). Oringderff petitioned for a reconsideration of that decision, but her claim was denied, again, on January 24, 2008. (Tr. at 38).

On March 28, 2008, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. at 52). That hearing, before ALJ Robert Burdette, took place on June 18, 2008. (Tr. at 22). Plaintiff appeared at the hearing, and she testified in her own behalf. (Tr. at 24-32, 34-35). She was not represented by counsel. (Tr. at 24). The ALJ also heard testimony from Kay Gilreath ("Gilreath"), a vocational expert. (Tr. at 32-34). Following the hearing, the ALJ engaged in the following five-step, sequential analysis to determine whether Oringderff was capable of performing substantial gainful activity or was, in fact, disabled:

> 1.  An individual who is working or engaging in substantial gainful activity will not be found disabled regardless of the medical findings. 20 C.F.R. §§ 404.1520(b) and 416.920(b).
>
> 2.  An individual who does not have a "severe impairment" will not be found to be disabled. 20 C.F.R. §§ 404.1520(c) and 416.920(c).
>
> 3.  An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will not be considered disabled without consideration of vocational factors. 20 C.F.R. §§ 404.1520(d) and 416.920(d).

4. If an individual is capable of performing the work she has done in the past, a finding of "not disabled" must be made. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

5. If an individual's impairment precludes performance of her past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if any work can be performed. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

*Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). It is well-settled that, under this analysis, the claimant has the burden to prove any disability that is relevant to the first four steps. *See Audler*, 501 F.3d at 448; *Perez*, 415 F.3d at 461; *Wren*, 925 F.2d at 125. If she is successful, the burden then shifts to the Commissioner, at step five, to show that she is able to perform other work that exists in the national economy. *See Audler*, 501 F.3d at 448; *Perez*, 415 F.3d at 461; *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Wren*, 925 F.2d at 125. "'A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.'" *Randall v. Astrue*, 570 F.3d 651, 652 (5th Cir. 2009) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)); *accord Audler*, 501 F.3d at 448.

It must be emphasized that the mere presence of an impairment does not necessarily establish a disability. *See Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)). An individual claiming disability insurance benefits under the Act has the burden to prove that she suffers from a disability. *See Perez*, 415 F.3d at 461; *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). A person is disabled only if she is "'unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.'" *Randall*, 570 F.3d at 653 (quoting 42

U.S.C. § 1382c(a)(3)(A)); *accord Perez*, 415 F.3d at 461. Substantial gainful activity is defined as "work activity involving significant physical or mental abilities for pay or profit." *Id.* A physical or mental impairment is "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Randall*, 570 F.3d at 657 (citing 42 U.S.C. § 423(d)(3)). Further, the impairment must be so severe as to limit the claimant so that she "'is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work'" which exists in the national economy. *Id.* (quoting 42 U.S.C. § 423(d)(2)(A)).

Based on these principles, as well as his review of the evidence, the ALJ determined that Oringderff suffers from "left knee problems and an affective mood disorder," and that those impairments are "severe." (Tr. at 16). He also found, however, that none of Oringderff's impairments, or any combination of impairments, meets, or equals in severity, the medical criteria for any disabling impairment listed in the applicable SSA regulations. (Tr. at 17). The ALJ next found that Plaintiff's residual functional capacity precludes a return to her past relevant work as a "financial aid specialist" or "owner of a housekeeping business." (Tr. at 19-20). But the ALJ determined that Oringderff does have the residual functional capacity to perform a range sedentary work. (Tr. at 18). Drawing on the evidence, the ALJ found that Oringderff is capable of performing such jobs as an "appointment clerk," a "receptionist," and a "maintenance dispatcher," and that such jobs are available in significant numbers in the national economy. (Tr. at 20). With that, the ALJ concluded that Oringderff had not been "under a disability as defined in the Social Security Act, at any time from April 14, 2005, the alleged onset date, through September 30, 2006, the date last

insured." (Tr. at 21).

On October 13, 2008, Plaintiff requested an Appeals Council review of the ALJ's decision. (Tr. at 6). SSA regulations provide that the Appeals Council will grant a request for a review if any of the following circumstances is present: "(1) there is an apparent abuse of discretion by the ALJ; (2) an error of law has been made; (3) the ALJ's action, findings, or conclusions are not supported by substantial evidence; (4) there is a broad policy issue which may affect the public interest." 20 C.F.R. §§ 404.970 and 416.1470. The Appeals Council denied the request on February 18, 2009, finding that no applicable reason for review existed. (Tr. at 1-3). With this ruling, the ALJ's decision became final. *See* 20 C.F.R. §§ 404.984(b)(2) and 416.1484(b)(2).

Following the agency's decision to deny her benefits, Oringderff obtained the assistance of an attorney, Cheryl Langston. On April 20, 2009, she filed this suit, to challenge that decision, and, subsequently, the pending motion for summary judgment. (Complaint, Docket Entry #1, at 1-2; Plaintiff's Motion, Docket Entry #22). Having considered the pleadings, the evidence submitted, and the applicable law, it is recommended that Plaintiff's motion be granted, and that this case be remanded for further proceedings, as set out in this memorandum.

**Standard of Review**

Federal courts review the Commissioner's denial of disability benefits only to ascertain whether the final decision is supported by substantial evidence and whether the proper legal standards were applied. *See Randall*, 570 F.3d at 655; *Newton*, 209 F.3d at 452 (citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)). "If the Commissioner's findings are supported by substantial evidence, they must be affirmed." *Id.* "'Substantial evidence is more than a scintilla, less than a preponderance, and is such that a reasonable mind might accept it as adequate to support a

conclusion.'" *Randall*, 570 F.3d at 662 (*quoting Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)); *accord Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). On review, the court does not "reweigh the evidence, but . . . only scrutinize[s] the record to determine whether it contains substantial evidence to support the Commissioner's decision." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *see Randall*, 570 F.3d at 662; *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). In making this determination, the court must weigh the following four factors: the objective medical facts; the diagnoses and opinions from treating physicians on subsidiary questions of fact; Plaintiff's own testimony about his pain; and Plaintiff's educational background, work history, and present age. *See Wren*, 925 F.2d at 126. If there are no credible evidentiary choices or medical findings that support the Commissioner's decision, then a finding of no substantial evidence is proper. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).

**Discussion**

In this case, Oringderff seeks judicial review of the Commissioner's decision to deny her an award of benefits. (Plaintiff's Motion at 1). At the outset, she complains that she "did not knowingly and intelligently waive her right to counsel" at the administrative hearing. (*Id.*; Plaintiff's Reply at 1-8). Prior to that hearing, Plaintiff received four written notices of her right to retain an attorney. (Defendant's Response at 4; Plaintiff's Reply at 2). For instance, when it initially denied her application for benefits and, later, her request for a reconsideration of that decision, the SSA notified Oringderff that, should she wish "help with [her] appeal," she had the following options:

> You can have a friend, lawyer or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security

office has a list of groups that can help you with your appeal.

> If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it. And if you hire a lawyer, we will withhold up to 25 percent of any past due Social Security benefits to pay toward the fee.

(Tr. at 40, 48). In response to her request for an administrative hearing, Oringderff received a third letter from the SSA, which repeated the earlier advisories, explained how a representative could assist her, and even gave her a phone number to call for help in finding an attorney. (Tr. at 53, 55). Further, in the "Notice of Hearing," the ALJ briefly mentioned representation, informing her as follows: "If you want to have a representative, please get one right away. You should show this notice to anyone you may appoint." (Tr. at 59). That notice did not contain any information regarding the availability of free representation, however. (*See id.*). Finally, at the hearing itself, Plaintiff was given oral notice of her right to counsel. (Tr. at 24-25). That colloquy is set out below:

> ALJ: Thank you. Ms. Oringderff, you're here today without a, without a representative, is that correct?
>
> CLMT: Yes, sir.
>
> ALJ: Everybody who appears before an Administrative Law Judge has the right to appear with a representative, the idea being somebody who can assist them or will assist them in advocating their position before an Administrative Law Judge. The fact that everyone is entitled to have a representative, however, cannot ever be construed as meaning that everybody is required to have a representative. If you were to tell me today that you understand that you have the right to have a representative and you want to give that right up and proceed with the hearing today, I'll grant that request.
> If, on the other hand, you tell me that you understand you have the right to have a representative and you want to, want me to reschedule this hearing one time to give you the opportunity to obtain a representative, I would grant that request. So, what I'm simply telling you is, I'm going to do whatever it is you want me to do.
>
> CLMT: I'd rather just proceed.
>
> ALJ: And give up your right to a representative?

7

    CLMT:    Yes.

(*Id.*). From the record, there can be no dispute that the Commissioner attempted to notify Plaintiff of her right to representation. But Plaintiff argues, here, that the ALJ's oral reminder of her right to representation was inadequate, because he did not inform her of the availability of free counsel. (Plaintiff's Motion at 4).

### *Knowing and Intelligent Waiver*

The law is clear that a claimant does not have a constitutional right to the assistance of counsel at a social security hearing. *See Clark v. Schweiker*, 652 F.2d 399, 403 (1981) (citing *Goodman v. Richardson*, 448 F.2d 388, 389 (5th Cir. 1971)). It is well established, however, that a claimant has a statutory right to representation at such a hearing. *See id.* at 403 (citing 42 U.S.C. § 406); *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003); *Brock v. Chater*, 84 F.3d 726, 729 n.1 (5th Cir. 1996); *Denson ex rel. F.B. v. Astrue*, 2009 WL 3765889, at *2 (S.D. Tex. 2009) (Smith, J.). In fact, the regulation that governs § 406 imposes "an obligation on the part of the Secretary to notify the claimant of his or her right to be represented at the hearing before the administrative law judge." *Clark*, 652 F.2d at 403; *see Herridge v. Richardson*, 464 F.2d 198, 200 (5th Cir. 1972); *Freeman-Park v. Barnhart*, 435 F. Supp. 2d 597, 601 (E.D. Tex. 2006). And although a claimant can waive her right to counsel, that waiver "must be knowing and intelligent." *Id.* (citing *Brock*, 84 F.3d at 729 n.1); *see Tanner v. Secretary of Health & Human Servs.*, 932 F.2d 1110, 1113 (5th Cir. 1991). "Even a claimant who states unequivocally that [s]he waives right to counsel must have received adequate notice of 'the scope of [that] right.'" *Freeman-Park*, 435 F. Supp. 2d at 601 (quoting *Gullet v. Charter*, 973 F. Supp. 614, 621 (E.D. Tex. 1997)). The question here, then, is whether Oringderff was sufficiently informed of the contours of her right to counsel in this instance. *See id.*

To be adequately apprised of her rights, a social security claimant must be informed of the

8

following matters:

> (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation of attorney fees to twenty-five percent of past due benefits and the required court approval of the fees.

*Id.* at 620 (citing *Clark*, 652 F.2d at 403); *accord Castillo*, 325 F.3d at 552 n.4; *Denson*, 2009 WL 3765889, at *2-3; *Freeman-Park*, 435 F. Supp. 2d at 601. In fact, in *Gullet*, the United States District Court for the Eastern District of Texas explained that each of these notice requirements serves an important function, stating as follows:

> The need for the first element of the notification, an explanation of the benefits of counsel, is self-evident. Primarily, the claimant should be made aware that an attorney can assist in obtaining and presenting evidence, and preparing and questioning witnesses. The second element, notification of the possibility of seeking free counsel or a contingency arrangement, is necessary because [t]he information regarding the cost of any attorney is particularly relevant in disability cases where shortage of funds is likely to be an issue for the claimants. If the claimant does not qualify for free legal services, (s)he should be aware of the possibility of a contingency agreement since the regulations allow HHS to award attorneys' fees even where there is no award of benefits in cases brought under either Title II or Title XVI. The third element, notification of the limitation on fees and the fee approval process, similarly relates to a claimant's potential financial concerns and should be included so as not to discourage a claimant from bringing a meritorious claim based on an apprehension that the award will be significantly diminished by legal fees.

973 F. Supp. at 621; *accord Earp v. Commissioner*, 168 F. Supp. 2d 628, 634 (E.D. Tex. 2001). It has been held repeatedly, in fact, that a social security claimant is entitled to notice of her right to counsel both in writing, before the hearing date, and orally, at the hearing. *See Denson*, 2009 WL 3765889, at *2-3 (citing *Earp*, 168 F. Supp. 2d at 634; *Gullet*, 973 F. Supp. at 621). If, at the hearing, the ALJ fails to properly inform a claimant of her rights with regard to representation, a claimant's waiver of counsel is not considered to be "knowing and intelligent." *See Freeman-Park*, 435 F. Supp. 2d at 601 (citing *Brock*, 84 F.3d at 729 n.1). A claimant can knowingly waive her right to counsel only after receiving adequate notice. *See Denson*, 2009 WL 3765889, at *2; *Freeman-*

*Park*, 435 F. Supp. 2d at 601; *Gullet*, 973 F. Supp. at 621.

In this case, Plaintiff was sent written notices that explained, in the necessary detail, her right to representation. (Plaintiff's Reply at 2). However, there is evidence in the record that Plaintiff suffers from mental limitations that could have affected her ability to understand the written notices. (*Id.* at 4; *see, e.g.*, Tr. at 91, 162, 172, 226, 228, 285, 368, 370, 468-71). In fact, the medical records contain findings by Dr. Glenn Bricken ("Dr. Bricken"), a clinical psychologist who examined Oringderff in June, 2006, and determined that she was suffering from moderate deficits in her mental ability. (Tr. at 468-71). Further, in his decision, the ALJ recognized that, "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties." (Tr. at 17). In addition, there is evidence that, during the relevant period, Plaintiff took a number of medications for pain, depression, and anxiety, and that she claimed that these medicines affected her ability to function. (*See, e.g.*, Tr. at 34-35, 117). In a number of cases, courts have found that a claimant did not validly waive the right to counsel when written notification of her rights was not followed up by a comprehensive oral notification. *See, e.g., Denson*, 2009 WL 3765889, at *2-3; *Freeman-Park*, 435 F. Supp. 2d at 601; *Earp*, 168 F. Supp. 2d at 634; *Gullet*, 973 F. Supp. at 620. In *Denson*, for instance, the waiver was found to be invalid, in part, because the ALJ did not do the following:

> . . . take steps at the hearing to ascertain that Denson was actually aware of her options for obtaining counsel, or that her waiver was voluntarily, knowingly and intelligently effected.

2009 WL 3765889, at *3. In *Freeman-Park*, the court found the waiver invalid because the ALJ did not "advise[] plaintiff of statutory limitations on attorney fees in social security cases"; did not "take steps to ascertain that plaintiff actually was aware of her options for obtaining counsel"; and did not otherwise ensure that "her waiver was voluntarily, knowingly and intelligently effected." 435 F. Supp. 2d at 6. In *Earp*, the court determined that a waiver was invalid because the claimant suffered

from a diminished mental capacity and was illiterate, yet the ALJ did not explain his right to free representation. *See* 168 F. Supp. 2d at 634. And in *Gullet*, the court emphasized that an ALJ has a duty to notify a claimant orally of the entire "scope" of her rights. *See* 973 F. Supp. at 620.

In opposition to Plaintiff's motion, here, Defendant cites *Castillo*, a case in which the Fifth Circuit determined that the claimant's waiver was valid although the ALJ did not give detailed oral notice of the right to counsel. *See* 325 F.3d at 553. In *Castillo*, however, the court made clear that its holding was based, in part, on factors peculiar to that case. *See id.* For instance, in that case, the ALJ elicited testimony from both Castillo and her husband that confirmed the claimant's ability to read, to see, and to comprehend. *See id.* Here, on the other hand, where there is evidence that the claimant's ability to understand the written notices may have been impaired, the ALJ took no steps to ascertain her understanding. (Plaintiff's Reply at 3). Also, in *Castillo*, the written notices were more comprehensive than those sent to Oringderff, because they included a two-page list of organizations that would represent social security claimants. *See* 325 F.3d at 552. Given these circumstances, it was more critical at Oringderff's hearing, as opposed to Castillo's, that the ALJ take steps to ensure that the claimant fully understood the scope of her rights. *See Denson*, 2009 WL 3765889, at *2-3.

In this case, Oringderff argues that, at the hearing, the ALJ did not sufficiently inform her of the scope of her right to counsel. (Plaintiff's Motion at 4). She claims, specifically, that the ALJ gave her no notification of the following matters:

> . . . the type of assistance an attorney can provide to the claimant during the hearing, that there is a possibility that the claimant could qualify for free representation, that she could also acquire counsel who would only receive compensation if she prevailed, and that the Social Security office will withhold a maximum of twenty-five percent of her past due benefits to pay toward the attorney's fee.

(*Id.*). She complains that, instead, the ALJ simply reminded her that she was entitled to counsel, but

that she did not have to avail herself of that right. (*Id.*; Plaintiff's Reply at 2). On this record, the court is persuaded that the ALJ's oral notification of the right to counsel was insufficient. The ALJ should have made certain that Oringderff fully understood that she could obtain a representative at no cost to her. *See Denson*, 2009 WL 3765889, at *2-3. He also should have ensured that Plaintiff knew how to find such representation. *See Clark*, 652 F.2d at 403; *Denson*, 2009 WL 3765889, at *2-3. Because the notice the ALJ gave her was insufficient, Oringderff did not make a knowing and intelligent waiver of her right to representation. *See Freeman-Park*, 435 F. Supp. 2d at 601-02 (citing *Brock*, 84 F.3d at 729 n.1). For that reason, a finding that Plaintiff's purported waiver of counsel was invalid is appropriate in this case. *See id.* (citing *Brock*, 84 F.3d at 729 n.1 (citing *Kane*, 731 F.2d at 1220)).

### *Prejudice*

But "[i]nvalid waiver alone . . . is not enough to remand the cause." *Id.* at 601. Instead, a claimant must show that she was prejudiced as a result. *See id.* (citing *Brock*, 84 F.3d at 729 n.1 (citing *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984))). To establish prejudice, a plaintiff "must show that counsel 'could and would have adduced evidence that might have altered the result.'" *Id.* (citing *Brock*, 84 F.3d at 728). She need not, however, show "that the presence of counsel would necessarily have resulted in any specific benefits in the handling of the case before the ALJ." *See Brown v. Astrue*, 2008 WL 8053433, at *5-6 (S.D. Tex. 2008) (Ellison, J.) (citing *Clark*, 652 F.2d at 404). Prejudice has been found in instances in which an unrepresented claimant did not appear to receive a full and fair hearing before the ALJ. *See Clark*, 652 F.2d at 404 (citing *Goodman*, 448 F.2d at 389; *Herridge*, 464 F.2d at 200; *Cross v. Finch*, 427 F.2d 406, 409 (5th Cir. 1970)). In *Clark*, the Fifth Circuit observed that an attorney would have "aided the claimant in the matter of the hypothetical questions put to the vocational expert by the [ALJ]." *Id.* at 406. The court

also noted that counsel "would have cross-examined the vocational expert." *Id.*; *see Earp*, 168 F. Supp. 2d at 634. Courts have also found prejudice when a claimant has shown that counsel could have aided her in obtaining more relevant evidence of the alleged disability. *See Clark*, 652 F.2d at 406; *Ivanova v. Astrue*, 2010 WL 2228511, at *9 (N.D. Tex. 2010); *Earp*, 168 F. Supp. 2d at 634. On the other hand, if a claimant makes no showing that prejudice resulted from the invalid waiver, the decision of the Commissioner need not be disturbed. *See Freeman-Park*, 435 F. Supp. 2d at 601-02.

Before this court, Oringderff argues that she was prejudiced as a result of her waiver of counsel. (Plaintiff's Motion at 4-5; Plaintiff's Reply at 4-8). She claims that, had she been represented at the hearing, "her medical evidence would have been thoroughly considered at the administrative hearing." (Plaintiff's Motion at 4-5; Plaintiff's Reply at 4). Oringderff points out that, during the hearing, the ALJ did not ask her any questions specific to her alleged impairments, or why they rendered her unable to work. (Plaintiff's Reply at 5-6; *see* Tr. at 24-32, 34-35). Further, she emphasizes that the ALJ asked no questions regarding her alleged mental impairments or the affect of a mental impairment on her ability to work. (Plaintiff's Reply at 6). The administrative record, however, contains corroborating evidence of Plaintiff's claims that she was suffering from, and being treated for, psychological disorders. (*See, e.g.*, Tr. at 91, 162, 172, 226, 228, 285, 368, 370, 468-71). In addition, Dr. Bricken diagnosed Plaintiff as suffering from anxiety and depression disorders, and gave her a rating of "50" on the Global Assessment of Functioning ("GAF") scale.[2] (Tr. at 468-71). A GAF score in the 41 to 50 range indicates "serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR moderate difficulty in social,

occupational, or school functioning (*e.g.*, no friends, unable to keep a job)." DSM-IV at 32. However, the ALJ made no mention of Plaintiff's GAF score, either at the hearing or in his written decision. (Plaintiff's Reply at 6). Clearly, an attorney would have directed the ALJ to this evidence, and elicited testimony from Plaintiff on her mental impairments. An attorney may also have sought additional evidence from Dr. Bricken, from Plaintiff's other doctors, or from another mental health expert. Under these circumstances, Oringderff certainly would have benefited from the assistance of counsel. *See Freeman-Park*, 435 F. Supp. 2d at 601-02 (citing *Brock*, 84 F.3d at 729 n.1).

Plaintiff also complains that, had she been represented at the hearing, "the vocational expert would have been properly cross-examined." (*Id.*). In particular, Oringderff points out that, when she attempted to ask Gilreath to consider the side-effects of her medication, the ALJ interrupted her. (*Id.* at 7). She complains that the issue of medication was never addressed as a result of that interruption. (*Id.*; *see* Tr. at 34-35). It is well settled that an ALJ should consider any side effects that "could render a claimant disabled or at least contribute to a disability." *Loza v. Apfel*, 219 F.3d 378, 397 (5th Cir. 2000); *see* 20 C.F.R. § 404.1529; *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999); *Bowling v. Shalala*, 36 F.3d 431, 438 (5th Cir. 1994). Had she been represented by an attorney, any issue of the side-effects of Oringderff's medication could have been adequately addressed. (Plaintiff's Reply at 7). Further, an attorney would have known that she was entitled to pursue the issue with Gilreath, following the ALJ's interruption, because it is well settled that a claimant has the right to cure perceived deficiencies in hypothetical questions posed to a vocational expert. *See Bowling*, 36 F.3d at 436; *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988); *Clark*, 652 F.2d at 404-06. For these reasons, as well, Oringderff could have used a representative at the hearing. *See*

---

2 The GAF scale is used to rate an individual's "overall psychological functioning." AMERICAN PSYCHIATRIC INSTITUTE, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS ("DSM-IV") 32 (4th ed. 1994). The

*Freeman-Park*, 435 F. Supp. 2d at 601-02 (citing *Brock*, 84 F.3d at 729 n.1).

Finally, Plaintiff complains that the ALJ did not give her much of an opportunity to make her case. (Plaintiff's Reply at 5-6). She points out that the hearing lasted only 18 minutes, including testimony from the vocational expert. (*Id.* at 5; Tr. at 24-36). In fact, the transcript of the entire hearing is less than twelve pages long. (Tr. at 24-36). Oringderff also complains that, during the hearing, the ALJ "d[id] not specifically ask [her] any questions regarding her impairments." (Plaintiff's Reply at 5). These facts are further evidence that the ALJ did not afford Plaintiff a "full and fair hearing." *See Clark*, 652 F.2d at 404

In sum, in Oringderff's case, it is likely that an attorney "could and would have adduced evidence that might have altered the result." *Freeman-Park*, 435 F. Supp. 2d at 601-02 (citing *Brock*, 84 F.3d at 728); *see Clark*, 652 F.2d at 404-06; *Ivanova*, 2010 WL 2228511, at *9; *Earp*, 168 F. Supp. 2d at 634. And it is equally likely that, without the benefit of representation, Oringderff "did not receive a full and fair hearing by the ALJ." *Clark*, 652 F.2d at 404. Here, then, Plaintiff has shown that she was prejudiced by her invalid waiver of counsel. *See id.*

As the Fifth Circuit has explained, "where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required." *Newton*, 209 F.3d at 459. "If prejudice results from the violation, the result cannot stand." *Id.* Under the facts particular to this case, the ALJ did not give Plaintiff proper notice of her right to counsel, and she was prejudiced as a result. For these reasons, the court recommends that Plaintiff's motion for summary judgment be granted, and that this case be remanded to the Commissioner for further proceedings, consistent with this memorandum.

---

scale ascribes a numeric range from "1" ("persistent danger of severely hurting self or others") to "100" ("superior functioning") as a way of categorizing a patient's emotional status. *See id.*

**Conclusion**

Accordingly, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED**.

It is further **RECOMMENDED** that this case be **REMANDED** to the Commissioner for further proceedings, consistent with this memorandum.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Lee H. Rosenthal, Room 11535, and to the chambers of the undersigned, Room 7007.

**SIGNED** at Houston, Texas, this 10th day of September, 2010.

_____
MARY MILLOY
UNITED STATES MAGISTRATE JUDGE